IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-628 |
| | § | C.A. No. C-06-251 |
| MANUEL GONZALES, JR., | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Manuel Gonzales, Jr. ("Gonzales") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which was received by the Clerk on June 16, 2006. (D.E. 26.)[1] The Court ordered the government to respond, and the government filed a combined motion for summary judgment and alternative response and motion for dismissal on August 22, 2006. (D.E. 27, 31, 32.)[2] Gonzales filed a reply on September 25, 2006. (D.E. 33.) The Court subsequently ordered the government to file a supplemental response addressing specific issues. (D.E. 36.) The government filed its supplemental response and Gonzales has responded. (D.E. 37, 38.) The Court has considered all of the submissions of the parties and the record in this case. As discussed in detail herein, two of Gonzales' three claims are subject to dismissal because he waived his right to file those claims. His other claim, which falls outside the scope of his waiver, fails on its merits. For these

---

[1] Docket entries refer to the criminal case, C-05-cr-628.

[2] On November 8, 2006, the government filed an amended response and motion (D.E. 34, 35.) As indicated by footnote 1 of that document, the amended version merely deletes a sentence in the original that asked the Court to expand the record to include the affidavit of defense counsel. (D.E. 35 at note 1.) According to the government, "a requested Affidavit from defense counsel was not forthcoming." The government's supplemental response, however, includes defense counsel's affidavit. (See D.E. 37 at Exhibit A.)

1

reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Gonzales a Certificate of Appealability ("COA").

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

**A.     Summary of Offense[3]**

On October 7, 2005, United States Park Rangers observed a vehicle traveling at 57 miles per hour in a 45 mile per hour zone, southbound on Park Road 22. The vehicle was within the Padre Island National Seashore boundaries. As a result of the vehicle's speed, agents conducted a traffic stop and made contact with the driver, Gonzales, who was accompanied by his father, Manual Gonzales, Sr., his uncle Jose Gonzales, and Gonzales' unnamed juvenile cousin, age unknown. During questioning by agents, Jose Gonzales opened the glove compartment to retrieve requested documentation and agents observed three shotgun shells in the compartment. Gonzales, Jr. was interviewed at the rear of the vehicle and denied knowledge of any weapons or drugs in the vehicle.

After receiving consent to search the vehicle, agents found open containers of alcohol under and around the front passenger seat, and cases of beer in the rear of the vehicle. They also located a bag of cocaine concealed within a pack of cigarettes that was located in a bag containing clothing. The cocaine was later determined to have a net weight of 10.4 grams. Gonzales, Jr. stated that the bag belonged to him. Gonzales, Jr. also stated that the plastic bag contained 21 grams of cocaine. Adjacent to the location of the cocaine was a small black plastic case that contained a scale. There was cocaine residue on the scale. Gonzales, Jr. was placed under arrest and transported to the Nueces

---

[3] The facts of the offense as set forth herein are derived from Paragraphs 4 through 7 of the Presentence Investigation Report ("PSR").

2

County jail.[4]

Two days later,[5] after discovering that Gonzales was previously convicted of a felony and thus prohibited from possessing any guns or ammunition, agents recovered four rounds of ammunition from the glove compartment of the same vehicle. At the time the ammunition was seized, Gonzales, Sr. was in control of the vehicle, which was located once again within the boundaries of Padre Island National Seashore. Gonzales, Sr. also advised agents that he, his son and others recently had gone target practicing and that was the reason the shotgun shells were in Gonzales, Jr.'s vehicle.

On October 14, 2005, ATF agents executed a search warrant at Gonzales, Jr.'s parent's residence in San Antonio. Agents contacted the defendant's father, who reported there was a 30-30 caliber rifle in the hallway. Agents were directed to the location and recovered a Winchester 30-30 caliber rifle, and six rounds of 30-30 caliber ammunition in a rifle bag. Gonzales, Sr. advised that his son, Gonzales, Jr., was aware of the location of the rifle and had access to it. Gonzales, Sr. also advised that there were several shotgun shells in Gonzales, Jr.'s bedroom which were left over from a shooting trip Gonzales, Jr. had taken a few weeks earlier. Agents located 17 shotgun shells in a hat in Gonzales, Jr.'s bedroom.

## B.    Criminal Proceedings

On October 26, 2005, a two-count indictment was filed against Gonzales charging him with: (1) possessing four rounds of ammunition while a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and (2) knowingly and intentionally possessing with intent to distribute

---

[4] On the way to the jail, Gonzales, Jr. stated that he had purchased the cocaine to use and to sell part of it to others. He also discussed previously engaging in incidents of poaching at the Big Bend National Park and in Arkansas. He later denied making those comments.

[5] The PSR is not clear as to when the ammunition was obtained from the glove compartment. (See PSR at ¶ 4.) In representations to the Court at the rearraignment, however, the AUSA confirmed that the ammunition was retrieved several days later, after agents discovered Gonzales' status as a prohibited person. (See D.E. 30, Rearraignment Transcript ("R. Tr.") at 17.)

approximately twenty-one grams (gross weight) of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (D.E. 8.) On November 21, 2005, Gonzales, Jr. pleaded guilty to Count One pursuant to a written plea agreement with the government. (D.E. 13, 15.) In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend a sentence within the lowest half of the applicable guideline range, to recommend that he be given maximum credit for acceptance of responsibility, and to move to dismiss Count Two at the time of sentencing. (D.E. 15 at ¶ 2.)

The plea agreement included a voluntary waiver of Gonzales' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 USC. [sic] § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 USC § 3742(b). Additionally, the defendant is aware that Title 28, USC § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 15 at ¶ 7 (emphasis in original).) The agreement was signed by both Gonzales and his counsel. (<u>Id.</u> at 5.)

At Gonzales' rearraignment, the Court specifically questioned Gonzales under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT:** ... Mr. Gonzales ..., in your plea agreement, you give up two very valuable rights that only belong to you. They're very personal to you and only you can give them up. One is a right to appeal, unless I give you a sentence that is higher than the statutory

4

>maximum or unless I upwardly depart from the guidelines without a motion from the U.S. Attorney. The second independent right that is independent of a right to appeal is a motion [sic] to file what's called a post-conviction remedy, it's also known as a writ of habeas corpus or a statutory 2255, wherein you could attempt to set aside your sentence and/or your conviction by challenging such matters as constitutionality, jurisdiction or ineffective assistance of counsel. But if you go forward with this plea agreement, you give up that right forever. Do you understand that? Mr. Gonzales?
>
>**THE DEFENDANT GONZALES**: Yes, Your Honor.

(D.E. 30, Rearraignment Transcript ("R. Tr.") at 22.)

The Assistant United States Attorney then summarized Gonzales' plea agreement, including a reference to the waiver of § 2255 rights. (R. Tr. at 24.) Gonzales testified that the summary was his entire agreement, that he understood it and that it was correct. (Id..) He also testified that there were no other agreements or promises made to him that were not contained in the written document, including any promise that he would get leniency or a motion for downward departure. (R. Tr. at 25.)

The Court showed Gonzales a written copy of the plea agreement. (R. Tr. at 26.) He testified that the document was his plea agreement, that he had signed the last page, and that he read it completely and discussed it completely with his attorney before he signed it. (Id..) It is clear from the foregoing that Gonzales' waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report. (D.E. 14.) The PSR calculated Gonzales' base offense level for the offense at 20. (PSR at ¶ 12.) It recommended that Gonzales be given a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 17. (PSR at ¶¶ 12-21.) When coupled with his criminal history category of VI, his resulting guideline sentence for a term of imprisonment was 51 to 63 months. (PSR

at ¶¶ 33, 32, 45.)

Gonzales, through counsel, filed a written objection to the PSR. (D.E. 19.) Specifically, he objected to the suggestion in the PSR in paragraph 60 that the court may consider increasing the sentence above his guideline range based on U.S.S.G. § 5K2.21. Section 5K2.21 allows a court to upwardly depart from the guidelines for charged offenses that were dismissed pursuant to a plea agreement. Gonzales argued that the dismissed count of possession with intent to distribute could not be a basis for an upward departure because he possessed only 10.4 grams, which was inconsistent with distribution, particularly in light of his comments that he consumed approximately 14 grams of cocaine per weekend.

Sentencing was held on February 6, 2006. (D.E. 20.) Gonzales' counsel reiterated his objection. Consistent with its obligations in the plea agreement, the government recommended a sentence of 56 months, which was in the middle range of the guidelines. Gonzales' counsel asked for 51 months, which was the lowest end of the guideline range. (S. Tr. at 18-19.) The Court sentenced Gonzales to the highest end of the guidelines, 63 months. (S. Tr. at 23.) The Court also imposed a three-year term of supervised release, a $25 fine and a $100 special assessment. (D.E. 20, 23.) The government moved to dismiss Count Two, which the Court granted. (S. Tr. at 24; D.E. 21-22.) Judgment of conviction and sentence was entered February 16, 2006. (D.E. 23.) Consistent with his waiver of appellate rights, Gonzales did not appeal. Gonzales' timely § 2255 motion was received by the Clerk on June 16, 2006. (D.E. 26.)

### III. MOVANT'S ALLEGATIONS

In his motion, Gonzales lists two grounds for relief. First, he claims that his conviction and sentence resulted from a violation of his Fourth Amendment rights because agents illegally obtained evidence and charged him based on it. Second, he claims that his counsel was ineffective for not filing

6

a motion to suppress that evidence. In support of these two claims, he points out that the rounds of ammunition he was charged with possessing were not confiscated at the time of his arrest; rather, they were confiscated during a separate traffic stop on the same vehicle two days later, after he was in custody. (D.E. 26, Supp. Mem. at 2-3.) He alleges that, during the second traffic stop, his father was in control of the vehicle. His allegation that the ammunition was confiscated later is supported by the affidavit of ATF Agent Angela R. Brown, who states that the ammunition was retrieved from Gonzales' vehicle on October 9, 2005 (two days after his initial arrest) after contact was made with Gonzales, Sr. (D.E. 26, Exhibit A, Affidavit of Angela Brown.) Additionally, his father provided an affidavit in support of Gonzales' § 2255 motion, in which he affirms that the shotgun shells were not confiscated at the time of the initial stop and arrest, but instead were confiscated two days later. (See D.E. 26, App. III, Affidavit of Manuel Gonzales, Sr..)[6]

Defendant also points to what he deems a discrepancy between the affidavits of the arresting officer and the AFT agent. Specifically, ATF Agent Brown's affidavit states that "[Park Ranger] Gagnon observed three shotgun shells. They were described as one red, one green, and one black shotgun shell." (D.E. 26, Supp. Mem. at 3.) By contrast, Gagnon's affidavit states that "as the glove compartment opened I immediately observed three green shotgun shells." (Id..)

In a related argument, Gonzales' memorandum also alleges that his counsel misled him into pleading guilty, presumably by telling him that he would be found guilty, rather than challenging the search. (D.E. 26, Supp. Mem. at 5-6.) He states that he "seeks to withdraw his plea agreement because he claims that the charges filed against him was [sic] staged, not knowing the law and how it applies to him he relied on this attorney to loyally search relevant facts for his defense." The Court

---

[6] Notably, this fact was made clear in the indictment, and the Court noted the discrepancy in dates prior to accepting Gonzales' guilty plea. (R. Tr. at 17; see also note 5 supra.) Thus, the fact that the shells were confiscated at a different time is not a fact that came to light at any point *after* his rearraignment.

7

construes this claim, i.e., that his counsel misled him into pleading guilty, as his third ground for relief.

The government has moved for summary judgment against Gonzales' motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations. (D.E. 32, 33 at 1.)

For the reasons set forth herein, Gonzales' claims fail.

## IV. DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Gonzales has procedurally defaulted his claims by failing to appeal. Rather, the Court concludes that he validly waived his first two claims, i.e., his claim that the search resulting in the confiscation of the shells was illegal, and his claim that his counsel was constitutionally deficient for not challenging the search. These claims both fall within the scope of his waiver, and thus the Court does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing

8

waiver of § 2255 rights).

His claim that he received ineffective assistance of counsel when entering into the plea agreement, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to this claim.

**B.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Gonzales argues that his attorney was deficient for misleading him into pleading guilty instead

9

of pursuing a challenge to the evidence based on the allegedly illegal search. When viewing the record as a whole, it is clear that Gonzales cannot establish his burden on this claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Gonzales must show that, absent his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Gonzales' decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Gonzales testified that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, that he was satisfied with the advice and efforts of his attorney, and that he was able to communicate with his attorney completely. (R. Tr. at 13.) The Court informed Gonzales of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 18-20.)

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Gonzales the maximum punishment that he might receive. Specifically, the Court informed him that he faced a maximum punishment of ten years in prison, and a maximum fine of $ 250,000. The Court also informed him that there was a mandatory $100 special assessment, and a maximum supervised release term of three years. (R. Tr. at 28-29.) Gonzales testified that he understood. (R. Tr. at 29.) Gonzales further testified that no one had forced him to plead guilty and that his decision to plead guilty was entirely voluntary. (R. Tr. at 34-35.) He testified that he was pleading guilty because he was, in fact, guilty. (R. Tr. at 44.)

Gonzales' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Gonzales' sworn statements show that he understood the charges against him, he understood the possible maximum sentence he faced, and he was not coerced into pleading guilty.

Gonzales appears to claim, though, that if his counsel had successfully pursued a motion to suppress, he would not have pleaded guilty, but would have continued to trial. Therefore, his argument goes, his counsel was deficient and he was prejudiced thereby. Gonzales appears to claim that the shotgun shells seized from the car should have been suppressed because there was not valid consent to search the car on the second date. He contends that his father gave consent, but that it was not voluntary and therefore invalid, because it was given only under threat of having the vehicle impounded. Thus, he argues that his counsel was deficient for encouraging him to plead guilty instead of challenging the seizure of the ammunition.

In support of his claim, he offers an affidavit from his father. In pertinent part, Gonzales, Sr. avers:

> On Sunday of that weekend on our way back to the park exit the park ranger officer pulled us over and asked me if the shells were still in the glove compartment. I said yes. The park ranger officer asked for the shells and said if he could take them. I said yes, because he told me that the truck had no insurance and license plate tags were expired. If I had denied him the shells that I would have to find a ride because they were going to take the truck.

(D.E. 26, Appendix III.)

As an initial matter, the after-the-fact claim of duress from the defendant's father is of questionable validity. It is curious that Gonzales never brought the issue to the Court's attention during

11

his criminal proceedings, despite the fact that he corrected what he perceived as other misstatements. Indeed, during the recitation of the facts of the offense at his rearraignment, Gonzales corrected the AUSA's recitation to note that the ammunition was retrieved on October 9, 2006, rather than at the time of his arrest. (R. Tr. at 36-38.) The AUSA agreed and explained that Gonzales' status as a felon was not known at the time that he was initially arrested, so the ammunition was not considered contraband. After it was discovered that Gonzales was prohibited from being in possession of weapons or ammunition, the ranger obtained permission from Gonzales' father and obtained the shotgun shells. (R. Tr. at 38-39.)[7] At no point, however, did Gonzales object to the assertion that his father had consented to the second search of the vehicle. Thus, assuming the veracity of Gonzales, Sr.'s affidavit, it is unclear whether Gonzales himself even knew about the circumstances of the second search prior to entering his plea.

Moreover, Gonzales, Sr.'s affidavit only vaguely suggests, but does not assert, that his consent was not valid. Gonzales, Sr. does not claim that he was threatened with arrest or that there was any physical threat toward him. He does not claim that he was verbally or physically abused. Indeed, he does not even allege that the ranger actually told him the truck would be confiscated. Rather, his affidavit simply states that he believed, based on the fact that the ranger told him the truck had no insurance and the license plate tags were expired, that the truck would be impounded if he did not consent to the search

Even if his affidavit clearly showed that the ranger's statement that the license plate tags were expired and that it lacked insurance was a threat to confiscate the vehicle, it is unlikely that fact would render the consent invalid. See Davis v. Novy, 433 F.3d 926, 930 (7th Cir. 2006) (consent to search

---

[7] Thus, the fact that the shotgun shells were seized two days later was not something that Gonzales' counsel failed to investigate, but rather it was known to the AUSA, Gonzales, his counsel, and the Court prior to the Court's acceptance of Gonzales' plea.

a vehicle was not rendered involuntary or invalid because the officer threatened to impound the vehicle if the individual did not consent, where state law authorized impoundment because of a lack of a driver's license and insurance and the individual was lacking both); see also Maricle v. Biggerstaff, 10 F. Supp. 2d 705 (N.D. Tex. 1998), affirmed by Maricle v. Biggerstaff, 168 F.3d 486 (5th Cir. 1999) (citing Tex. Transp. Code Ann. §§ 601.051 and holding that officers could seize and impound a vehicle being operated without proof of insurance in Texas).

But more importantly, whether or not the consent to search was illegal is not the issue before this Court at this juncture. The issue before the Court is whether Gonzales, Jr. was denied the effective assistance of counsel during the plea process, such that his waiver of § 2255 rights is invalidated. In order to show ineffective assistance of counsel, Gonzales must show that his counsel was deficient for not filing a motion to suppress, and instead encouraging him to plead guilty. This is a showing he has not made.

The Fifth Circuit has repeatedly admonished that attorneys should not be subjected to unrealistic standards and that, when reviewing a § 2255 motion, "the acuity of hindsight is not our proper lens." United States v. Faubion, 19 F.3d 226 (5th Cir. 1994). Keeping that standard in mind, the Court concludes that counsel's decision not to pursue a suppression motion did not fall below an objective standard of reasonableness. Cf. Strickland, supra.

The government has provided the affidavit of Gonzales' appointed counsel, Rene Flores. On the issue of the father's consent, Mr. Flores avers that he investigated the matter:

> One of the first issues I looked at was whether Mr. Gonzales' father had given permission to search the vehicle. I spoke with Mr. Gonzales' father that same day and he advised that the ranger had not asked for permission to search the vehicle, but simply asked for the shotgun shells. Mr. Gonzales' father, who was fishing at the time, then directed the ranger to where the truck was so he could retrieve the shells, which the ranger did.

(D.E. 37, Exhibit A, Flores Aff. at ¶ 7.).

Mr. Flores further explained that, after reviewing the discovery with his client, his client made clear that he wanted to plead guilty to count one in exchange for the dismissal of count two, if he could. Mr. Flores testifies:

> At no time before his re-arraignment did Mr. Gonzales advised [sic] me that he though the search was illegal. Furthermore, it was never an issue with me before his re-arraignment because my client seemed interested in pleading guilty and so it was not an issue I explored further. In my mind the seizure of the ammunition was consensual since Mr. Gonzales' father had, at least implicitly, given permission to the ranger to retrieve the ammunition. Finally, I believed probable cause existed because the ranger had already seen the shotgun shells in the vehicle, and he had already seen the shells. Our strategy was to plea guilty to count one, get the second count dropped, and save at least a point. Such was the plea deal I secured from the government ...

(Id. at ¶ 9.)

It is clear that Flores investigated the issue, and spoke to Gonzales' father. There is nothing in the record to contradict what Flores avers Gonzales' father told him. Based on that information, it was not objectively unreasonable for Flores to conclude that a motion to suppress was not going to be successful and that a plea agreement including the dismissal of Count Two was desirable. Accordingly, Gonzales cannot establish deficiency on this ground, and his claim fails.

Because the Court concludes that Gonzales' sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**C.    Waiver of § 2255 Rights**

It is clear from the rearraignment that Gonzales understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for

his waiver to be enforceable. (R. Tr. at 22.)  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Gonzales' statements under oath are entitled to a strong presumption of truthfulness.  Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his wavier was knowing and voluntary.  Gonzales' remaining claims, which directly challenge the search and seizure, and his counsel's failure to challenge the search, clearly fall within the scope of that waiver.

In sum, while Gonzales' ineffective assistance claims as affecting his plea is denied on the merits, his remaining claims fall within the scope of his waiver.  Therefore, they are not properly before the Court.  For these reasons, Gonzales' § 2255 motion is DENIED in its entirety.

### D.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Gonzales has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Gonzales is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

## V. CONCLUSION

For the above-stated reasons, Gonzales' motion under 28 U.S.C. § 2255 (D.E. 26) is DISMISSED WITH PREJUDICE. The Court also DENIES Gonzales a Certificate of Appealability.

ORDERED this 14th day of January, 2007.

_____
Janis Graham Jack
United States District Judge